61 F.3d 920
 40 Cont.Cas.Fed. (CCH) P 76,818
 NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
GTE GOVERNMENT SYSTEMS CORPORATION, Appellant,
v.
William J. PERRY, Secretary of Defense, Appellee.
 No. 91-1424.
 United States Court of Appeals, Federal Circuit.
 July 18, 1995.
 
 ASBCA
 REVERSED.
 Before ARCHER, Chief Judge,* RICH, and RADER, Circuit Judges.
 ARCHER, Chief Judge.
 
 
 1
 GTE Government Systems Corporation (GSC), a wholly owned subsidiary of General Telephone & Electronics (GTE), appeals the decision of the Armed Services Board of Contract Appeals (ASBCA or board),[1] holding that the stock purchase discount afforded eligible employees under GTE's Employee Stock Purchase Plan (ESPP) is not a reimbursable cost as compensation for personal services under GSC's contract with the Department of Defense. We reverse the decision of the board.
 
 I.
 
 2
 In 1980, the government awarded GSC a cost-type contract for engineering services in connection with the MX missile system. The contract contained a standard clause entitled "ALLOWABLE COST, INCENTIVE FEE, AND PAYMENT (1979 MAR)" in the form prescribed in Defense Acquisition Regulation (DAR) 7-203.4(b). This clause required the government to pay GSC its costs determined to be allowable in accordance with certain regulations, including DAR 15-205.6(a)(1).
 
 
 3
 Under GTE's voluntary ESPP, employees of GTE and its subsidiaries who had completed 30 days of service on an offering date under the plan were eligible to participate in the ESPP. In this case, the offering period extended from July 1980 to May 1982. Participating employees were eligible to purchase one share of GTE stock for each $50 of the employee's annual basic rate of pay up to a maximum of 800 shares. The purchase price per share was the lesser of 85% of the fair market value on the date the offer commenced or 85% of the average market price on the last date of the offering. Payment for the stock was made through payroll deductions.
 
 
 4
 At the commencement date, the fair market value of GTE's stock was $26.07 per share and on the closing date its average market price was $28.31. Participating employees, therefore, could purchase stock at $22.16 per share, representing 85% of the commencement date price. This yielded an effective discount of $6.14 per share from the closing date price, or a discount of 21.7%. Participating employees acquired rights as shareholders at the close of business on the last day of the offering period and received stock certificates as soon as practicable thereafter.
 
 
 5
 GTE's ESPP is a "qualified" plan within the meaning of Internal Revenue Code (IRC) Sec. 423. Under a qualified plan, participating employees generally are not required to recognize taxable income on the discount portion of their stock purchase until the stock is sold. Concomitantly, Congress provided in IRC Sec. 421 that an employer corporation generally is not permitted any deduction under IRC Sec. 162 (relating to ordinary and necessary business expenses) for the discount portion of the purchase price for stock transferred to employees under a qualified employee stock purchase plan.[2] According to GTE, its discount costs were deductible, but "GTE chose not to deduct them by 'qualifying' its ESPP under IRC Sec. 423 for a special tax treatment for its employees and thus relinquished its right to deduct the ESPP costs."
 
 
 6
 In 1984, after the ASBCA's decision in Singer Co., ASBCA No. 18,857, 82-1 BCA p 15,684,[3] GTE began claiming the ESPP discount as an allowable compensation cost by adjusting its General and Administrative (G & A) rates applicable to government contracts for past years not yet closed, including the year 1981 here at issue. After its G & A rates were audited, the government advised GTE that the ESPP discount was unallowable as a compensation cost. GTE appealed to the ASBCA which sustained the contracting officer's decision. This appeal followed.
 
 II.
 
 7
 Under the Contract Disputes Act, this court's standard of review is:
 
 
 8
 [T]he decision of the agency board on any question of law shall not be final or conclusive, but the decision on any question of fact shall be final and conclusive and shall not be set aside unless the decision is fraudulent, or arbitrary, or capricious, or so grossly erroneous as to necessarily imply bad faith, or if such decision is not supported by substantial evidence.
 
 
 9
 41 U.S.C. Sec. 609(b). There is no dispute as to the facts. This case involves only the interpretation of contract and regulatory provisions, which are questions of law. Thus, this court's review is de novo.
 
 
 10
 The issue in this case is whether the stock purchase discount under GTE's ESPP, a qualified plan, is allowable as a compensation cost under DAR 15-205.6, Compensation for Personal Services. That DAR provision provides:
 
 
 11
 (a) General
 
 
 12
 (1) (CWAS) Compensation for personal services includes all remuneration paid currently or accrued, in whatever form and whether paid immediately or deferred, for services rendered by employees to the contractor during the period of contract performance (except as otherwise provided in 15-205.6(f)). It includes, but is not limited to, salaries, wages, directors' and executive committee members' fees, bonuses (including stock bonuses), incentive awards, employee stock options, employee insurance, fringe benefits, contributions to pension, annuity, and management employee incentive compensation plans, allowances for off-site pay, incentive pay, location allowances, hardship pay and cost of living differential.... Except as otherwise specifically provided in this 15-205.6, such costs are allowable to the extent that the total compensation of individual employees is reasonable for the services rendered and they are not in excess of those costs which are allowable by the Internal Revenue Code and regulations thereunder....
 
 
 13
 The board interpreted this provision of the DAR as establishing "tax allowability as a touchstone for the allowability of compensation costs." It relied on the last sentence of this provision and on the statement in Chrysler Corp., ASBCA No. 14,385, 71-1 BCA p 8779, at 40,767, that "[a]llowability as a tax deduction is a basic requirement which must be met." The board stated that "our own decisions in Singer and Honeywell [ASBCA Nos. 28,814, 29,140, 84-3 BCA p 17,690] are inapposite" because "the GTE plan does not share a common tax treatment with those plans, and that consideration is dispositive."
 
 III.
 
 14
 GTE advances two principal arguments to refute the conclusions of the board.[4] First, GTE maintains that Chrysler does not dictate the result here, as the board determined. GTE argues that Chrysler stands only for the narrow proposition that "where a contractor has accrued compensation costs on its books, but has made no cash expenditures, the government will reimburse the contractor not when the accruals are entered on the company's books, but rather if and when they become fixed, irrevocable obligations of the company under the various IRC rules dealing with accruals." This, according to GTE, produces a "reasonable procurement result" of resolving the timing issue of when compensation costs are actually incurred (i.e. not contingent) and, therefore, reimbursable to the particular year. Thus, in contrast to the contingent costs of Chrysler, GTE urges that it claims only real, incurred costs.
 
 
 15
 The Chrysler case presents an illustration of costs that are not generally recognized by the Internal Revenue Code as allowable as a deduction when the accrual occurs. The board held that tax deductibility was relevant in determining whether the accrued self-insurance liability should be treated as a current obligation for the company in the current year. Tax deductibility was used to determine whether there was substance to the claimed cost at the time of accrual. As stated by the board in Chrysler:
 
 
 16
 That basic requirement [tax allowability] gives assurance that the generation of reimbursable costs of personal services is evidenced by something more substantial than the gleam in an actuary's eye or the flick of a bookkeeper's pen.
 
 
 17
 Chrysler, 71-1 BCA p 8779, at 40,767. The general language as well as several examples of DAR 15-205.6(a)(1) indicate that accrued, deferred, and non-cash costs are potentially reimbursable. As in Chrysler, the Internal Revenue Code and the regulations thereunder serve to identify whether such costs are real obligations of the government contractor subject to reimbursement and to what year they should be attributed. In other words, are the costs more than a gleam in the eye or a flick of a pen. It is the real obligations of the contractor that the DAR contemplates will be reimbursable.
 
 
 18
 Because of the factual context involved in Chrysler, we do not agree with the board that its statement requiring tax deductibility or a tax deduction is necessarily appropriate in all personal service compensation cases. This is a case where neither the substantiality of the costs, nor the particular year in which they should be claimed, is at issue. As noted, the government does not dispute that the costs at issue were actually incurred at the time claimed. The costs in this case, therefore, differ substantially from those in Chrysler and do not require resort to the Internal Revenue Code principles for the reasons noted in Chrysler. Thus, we do not regard the statement in Chrysler as to deductibility to be persuasive here.
 
 
 19
 GTE next argues that because its discount costs are of the same nature and type as those involved in the Singer and Honeywell cases, it is immaterial that GTE elected to forgo a tax deduction for what were otherwise deductible costs when it qualified its plan for the benefit of its employees. It contends that this distinction should not cause a difference for procurement purposes. GTE urges that all contractors should be treated comparably in allowing reimbursement for personal service compensation costs of the same type. While these are strong considerations favoring GTE's argument, we must examine the language of the DAR provision to determine whether it permits such a result.
 
 
 20
 Both the Court of Claims and the board in their Singer decisions recognized that the DAR stated a broad, inclusive principle of reimbursement for personal service costs of all types. Singer, 225 Ct.Cl. at 639; Singer, 82-1 BCA p 15,684, at 77,540. We agree that the operative language could hardly be broader--"compensation ... includes all remuneration paid currently or accrued, in whatever form and whether paid immediately or deferred." DAR 15-205.6(a)(1). The enumerated examples of reimbursable compensation costs are similarly expansive, including as they do a variety of deferred, incentive, and fringe benefit forms of compensation as well as direct cash compensation. With such coverage, any exceptions to reimbursability should be clear.
 
 
 21
 Against this policy favoring reimbursement of all remuneration for personal services, DAR makes reference to the reasonableness and allowability of the costs of personal services under the Internal Revenue Code. The sentence at issue says that "such costs are allowable to the extent that the total compensation of individual employees is reasonable for the services rendered and they are not in excess of those costs which are allowable by the Internal Revenue Code and the regulations thereunder." Id. No question has been raised in this case as to the reasonableness of the total compensation of any employee--only the "allowability" language is at issue.
 
 
 22
 The DAR provision at issue does not say "deductible" or "deducted," but instead uses the term "allowable." The latter generally has a more expansive dictionary meaning, including for example "permissible" or "not forbidden," whereas the former means capable of being "taken off" or "subtracted." Webster's II New Riverside University Dictionary 94,355 (1984). Standing alone these definitions are not controlling, but when considered with other provisions of this DAR section they take on added significance. Thus, DAR 15-205.6(f) provides that for pension costs to be reimbursable they must be "deductible in the same fiscal year for federal income tax purposes." (Emphasis added.) Precise tax conformity is required. Yet, the earlier paragraph (a) of the same DAR section here at issue, dealing with personal services reimbursement, does not use the same tax conformity "deductible" language.
 
 
 23
 Thus, under the broad reimbursement policy stated in DAR 15-205.6(a)(1) we conclude that the "allowable ... by the Internal Revenue Code" language should not be given an overly restrictive reading. We think this is confirmed by the provisions of the Internal Revenue Code that use the "allowable" language. Under IRC Sec. 162, all ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business are "allowed as a deduction." (Emphasis added.) These include "a reasonable allowance for salaries and other compensation for personal services." (Emphasis added.) The DAR picks up the emphasized words from Sec. 162, which sets forth the general rules for deductibility. Although there are exceptions to these general rules in other provisions of the Internal Revenue Code, such as Sec. 421 which denies an employer tax deduction for the costs associated with a qualified plan, we are convinced that precise tax conformity is not required by this paragraph of the DAR as it is in the case of the pension plan paragraph. In other words, in the case of personal service costs, the general rules of the Internal Revenue Code are applicable and not special tax provisions that may be contained elsewhere in the Code.
 
 
 24
 In this case, there is no question that GTE incurred a real cost in the years at issue in providing its employees with a stock purchase discount. Moreover, its cost would be deductible were it not for the favorable tax treatment that Congress afforded employees under qualified Sec. 423 plans. That GTE voluntarily decided to forego its tax deduction, in order to provide this special tax treatment for employees, does not require that its case be distinguished from Singer and Honeywell. Insofar as the Internal Revenue Code is concerned, these costs are of the same type and would be fully deductible under Sec. 162 except for the legislative largest Congress afforded employees under qualified plans. Construing the term allowable to refer to costs of the nature and type generally deductible, i.e., not forbidden by the Internal Revenue Code, we conclude that GTE's ESPP discount costs are properly reimbursable. From a procurement standpoint, there is no reason to treat GTE's ESPP differently from the plans of Singer and Honeywell.
 
 
 25
 REVERSED.
 
 
 
 *
 Chief Judge Archer assumed the position of Chief Judge on March 18, 1994
 
 
 [1]
 GTE Gov't. Sys. Corp., ASBCA No. 37,176, 91-2 BCA p 23,987 (April 22, 1991)
 
 
 [2]
 If there is a premature disposition by the employee of the stock, the discount cost becomes deductible by the employer. IRC Sec. 421(b)
 
 
 [3]
 Singer Co., ASBCA No. 18,857, 75-1 BCA p 11,185, remanded, Singer Co. v. United States, 225 Ct.Cl. 637 (1980), on remand, Singer Co., 81-2 BCA p 15,167, remanded, Singer Co. v. United States, 229 Ct.Cl. 589 (1981), on remand, Singer Co., 82-1 BCA p 15,684
 
 
 [4]
 GTE also contends that its discount costs should be considered to be "allowable" under the Internal Revenue Code because, under IRC Sec. 312, its discount costs would be allowable as earnings and profits of the corporation. In view of our disposition, we need not consider this argument